IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHERALE WILLIS, on Behalf of Herself and All Others Similarly Situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 5:23-cv-430 (MTT) |

## **ORDER**

Plaintiffs Cherale Willis, Sandy Colbert, Tiffaney Peacock, and Caral Taylor filed this action against GEICO General Insurance Company and Government Employees Insurance Company, on behalf of themselves and similarly situated employees, to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Doc. 33. There are two related FLSA collective actions against GEICO pending in this Court.[1] *See Benvenutti v. Government Employees Ins. Co. d/b/a GEICO et al.*, No. 5:22-cv-00182-MTT (M.D. Ga.); *see also Rice v. Government Employees Ins. Co. et al.*, No. 5:23-cv-00414-MTT (M.D. Ga.). GEICO moves to dismiss this action as duplicative because the four named plaintiffs in this case are also opt-in plaintiffs in *Benvenutti*.

---

[1] In this case and the related actions, there are two defendants; there is no difference between the defendants, and they are both referred to as GEICO.

Doc. 37.  For the following reasons, the Court **DENIES** the defendants' motion (Doc. 37) and consolidates *Benvenutti* with this case.

## I. BACKGROUND

In *Benvenutti*, the Court conditionally certified a collective action and ordered that notice be sent to: "All current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020."  No. 5:22-cv-182-MTT, Doc. 39 at 10.  The plaintiffs in this case seek to certify a complementary collective action for GEICO employees who worked in an hourly-paid position other than "Service Representative."[2]  Doc. 33 ¶¶ 33, 80.  The plan was that because the *Benvenutti* plaintiffs are Service Representatives and the *Willis* plaintiffs held positions other than Service Representative, the cases would not overlap.  It has not turned out that way.

### A. *Benvenutti*, No. 5:22-cv-00182-MTT (M.D. Ga.)

Benvenutti, a former claims service representative, alleges that GEICO failed to pay her and similarly situated employees for all hours worked in violation of FLSA's overtime provisions, 29 U.S.C. § 207.  Docs. 1 ¶¶ 1-2; 35.  She sought certification of a collective consisting of "all customer service representatives ('CSRs') assigned to work out of the Macon Call Center," within the past three years; CSR was defined as "any

---

[2] The plaintiffs specifically seek certification of a collective action defined as:

> All current and former hourly-paid GEICO employees who have handled communications with GEICO customers and/or communications related to GEICO customers and were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since October 26, 2020, and who at any time during this period worked in a job position other than 'Service Representative,' *as defined in the Benvenutti Court's April 26, 2023 Order*.

Doc. 33 ¶¶ 33, 80 (emphasis added).

hourly phone representative who handles calls from customers regarding matters related to claims and/or policy service such as questions regarding coverage, premiums etc."  Doc. 1 ¶¶ 9, 24, 27, 29-33.

On March 29, 2023, Benvenutti amended her complaint.  Docs. 28 at 1-2; 35.  Relevant here, the amended complaint does not use the term CSR.  Instead, it defines the collective as: "All current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020."  Doc. 35 ¶ 35.  Service Representative is not defined.  However, the amended complaint alleges that Service Representatives, like CSRs, are paid hourly and assist customers over the phone with existing policies, changes to policies, and billing issues.  Docs. 1 ¶ 9; 35 ¶¶ 15-16, 20.

Benvenutti alleges that in March 2020 GEICO implemented a remote work model for its Service Representatives, resulting in changes to its pay and timekeeping policies.  Doc. 35 ¶ 19.  GEICO allegedly pays Service Representatives only for the time they were logged into Finesse, a program used when answering customer calls and recording information regarding a claim or policy.  *Id.* ¶¶ 21-22.  Because employees are not paid for time they are not logged into finesse, Service Representatives are not compensated for the "multi-step" login process and the time spent loading other programs before logging into Finesse.  *Id.* ¶¶ 24-25.  Nor are they paid for tasks completed after logging out of Finesse.  *Id.* ¶ 26.  Finally, Benvenutti alleges that GEICO does not pay its Service Representatives for "downtime" when experiencing a technical issue lasting longer than 15 minutes.  *Id.* ¶¶ 28-30.

Based on these allegations, Benvenutti moved to conditionally certify a collective action of Service Representatives. Doc. 29. The Court granted the motion on April 26, 2023, and ordered GEICO to produce the names and addresses of its Service Representatives, so that they could be sent notice. Doc. 39 at 10. In response, GEICO identified only individuals with job titles including "Service Representative." Docs. 114-2 at 1; 115 at 2. Even individuals with Service Representative titles, however, were omitted from the list without explanation. Doc. 117 at 2. Individuals employed as Emergency Roadside Service ("ERS") Representatives, for instance, were not included.[3] *Id.* at 5. Additionally, other employees whose job title did not include "Service Representative"—like Cherale Willis, a former Salvage Representative, and Sandy Colbert, a former Retention Representative—filed notices of consent to participate because they worked in GEICO's centralized service department and understood themselves to be Service Representatives. Docs. 114 at 5; 115 at 2. When contacted by plaintiff's counsel as to why these individuals were not included on the list, GEICO took the position that these individuals were not within the category of "Service Representatives" for whom the Court ordered notice.[4] Docs. 114-2; 114-3; 115 at 2-3.

---

[3] Curtis Hill was employed as an Internet Service Representative, yet he was omitted from the notice list produced by GEICO. *Benvenutti*, No. 5:22-cv-182-MTT, Doc. 117 at 4 n.4. Hill then opted-in to both this case and *Benvenutti*. Once GEICO agreed that he should have been included on the list, he was voluntarily dismissed from this action. Doc. 35. But there was no explanation for why Hill or other Internet Service Representatives—like Taylor Peacock, a named plaintiff in this case—were not included on the notice list. In fact, GEICO told plaintiff's counsel that Peacock was not a "Service Representative" and claimed that she instead worked as an "Internet ERS/Glass Representative." *Benvenutti*, No. 5:22-cv-182-MTT, Doc. 114-2. GEICO has since acknowledged that Peacock was an "Internet Service Representative," who should have been included on the notice list. *Benvenutti*, No. 5:22-cv-182-MTT, Doc. 115 at 2.

[4] Apparently, GEICO only considers individuals with the word "service" immediately before the word "representative" in their job title a "Service Representative" for whom notice was required, but even under this interpretation it is unclear why ERS Representatives are not included. Again, ERS Representative stands for Emergency Roadside *Service Representative*.

**B.** *Willis***, No. 5:23-cv-00430- MTT (M.D. Ga.)**

Plaintiffs Willis, Colbert, and Peacock then filed this action against GEICO to recover unpaid overtimes wages on behalf of themselves and similarly situated employees assigned to the Macon call center who worked in an hourly-paid position other than "Service Representative."  Doc. 1.  On December 13, 2023, the plaintiffs amended their complaint as of right and added Caral Taylor as a named plaintiff.  Doc. 33. "Examples of job titles held by Plaintiffs and similarly situated employees include … Salvage Specialist, Salvage Representative, Salvage Title Specialist, Salvage Title Processor, Retention Representative, ERS Dispatcher (i.e., Emergency Roadside Service Dispatcher), ERS Representative (i.e., Emergency Roadside Service Representative), Glass Representative, ERS/Glass Representative, Internet ERS/Glass Representative, [and] Claims Specialist, among others."  *Id.* ¶ 34.  GEICO refers to these hourly workers as "Associates."  Doc. 59 at 2 n.1.

The plaintiffs claim they are similarly situated to the employees in *Benvenutti* but assert they were not among the call center workers who received formal notice of the action.  Docs. 1 ¶ 1; 39 at 5.  Like *Benvenutti*, the plaintiffs in this case allege they are paid hourly, they are assigned to the Macon call center, and they handle communications with GEICO customers.  Doc. 33 ¶ 33; *Benvenutti*, No. 22-cv-182-MTT, Doc. 35 ¶¶ 24-25.  Both cases also allege that the plaintiffs all use Finesse and GEICO does not pay them for time not captured by Finesse.  Doc. 33 ¶¶ 40, 45, 49, 74-77; *Benvenutti*, No. 22-cv-182-MTT, Doc. 35 ¶¶ 21-22.  The plaintiffs in both cases claim that GEICO failed to compensate them for time spent on necessary activities such as booting up and shutting down their computers, logging into required software, and

dealing with technical issues during their shifts or while logging into to their computers. Doc. 33 ¶¶ 51-55; *Benvenutti*, No. 22-cv-182-MTT, Doc. 35 ¶¶ 24-25. All plaintiffs further allege that they must undertake a multi-step login process and perform other work-related tasks while not logged into Finesse. Doc. 33 ¶¶ 53-55, 66; *Benvenutti*, No. 22-cv-182-MTT, Doc. 35 ¶¶ 26-31. Finally, all plaintiffs claim they are not compensated for tasks completed after logging out of Finesse at the end of their shifts or for "downtime" when experiencing a technical issue lasting longer than 15 minutes. Doc. 33 ¶ 62; *Benvenutti*, No. 22-cv-182-MTT, Doc. 35 ¶¶ 28-31.

Based on these allegations, the plaintiffs in this case seek certification of a collective action consisting of all Macon call center workers who handled communications with GEICO customers since October 2020 but who were not included on the list of employees to be notified in *Benvenutti*, i.e., worked as "non-service representatives." Doc. 33 ¶¶ 33, 80. In response, GEICO moves to dismiss this action as duplicative because the four named plaintiffs, and at least seventeen opt-in plaintiffs in this case, are also opt-in plaintiffs in *Benvenutti*. Docs. 37; 39 at 5. Willis and Colbert subsequently moved to be voluntarily dismissed from *Benvenutti*, so that they can proceed as named plaintiffs in this case. *Benvenutti*, No. 22-cv-182-MTT, Doc. 114. Peacock, a former Internet Service and ERS Representative, and Taylor, a former Customer Service and Salvage Representative, apparently intend to proceed as plaintiffs in both cases, as they worked in both service and non-service representative positions during the relevant time periods. *See* Doc. 33 ¶¶ 17, 23. A motions hearing was held on February 13, 2024. Doc. 56.

## II. DISCUSSION

"[A] suit is duplicative of another suit if the parties, issues, and available relief do not significantly differ between the two actions." *IA. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986); *Georgia ex. rel. Olens v. McCarthy*, 833 F.3d 1317, 1321 (11th Cir. 2016). District courts have significant discretion to determine whether a subsequent action is duplicative of a pending action and if so to stay, transfer, dismiss, or consolidate the case(s). *See McCarthy,* 833 F.3d at 1321; *see also Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).[5] The purpose of this rule is to avoid piecemeal litigation of issues that require a uniform result and to avoid the waste of duplicative proceedings. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[T]he general principle is to avoid duplicative litigation.").

**A. Duplicative Litigation**

The Court agrees with GEICO that this action is duplicative of *Benvenutti*. First, the parties in both cases are substantially the same. Both actions are filed against the same two defendants, and the four named plaintiffs in this case and at least seventeen opt-in plaintiffs are also opt-in plaintiffs in *Benvenutti*. While some plaintiffs who have opted into this action are not plaintiffs in *Benvenutti*—e.g., Cheyenne Cosby, Nicholas B. Durden, Shanita Fitzpatrick Little, Emily Valentine (Docs. 20; 29; 31)—the parties need only substantially overlap. *Figueroa v. Hertz Corp.*, 2019 WL 13294658, at *2 (M.D. Fla. Aug. 15, 2019) (collecting cases). Here, there is a substantial overlap

---

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

between the parties in both cases. Although *Willis* was filed to cover employees excluded from *Benvenutti* because of GEICO's literal application of "Service Representative" in job titles, it is now clear there is no material difference among the employees sought to be included in the two cases.

Second, there is substantial overlap between the issues in each case. Both actions allege that GEICO failed to compensate its hourly paid call center employees for all hours worked in violation of the FLSA. The specific allegations revolve around claims that employees were only paid for the time they were logged into Finesse and not compensated for necessary work-related tasks performed before logging in and after logging out of Finesse at the beginning and end of their shifts. Even though the plaintiffs were employed in positions with different job titles the common policy alleged in both cases is the same. Accordingly, both actions raise common legal questions regarding the interpretation and application of the FLSA and similar fact questions regarding GEICO's employment practices related to Finesse.

Finally, the relief sought in both actions is also the same. Both cases seek to recover unpaid overtime wages and liquidated damages under the FLSA.

Given the substantial similarity in parties, issues, and requested relief, the Court finds that this action is duplicative of *Benvenutti*.

**B. Case Disposition: Consolidation**

The Court finds that dismissal is not appropriate, and that *Benvenutti* should be consolidated with this case. First, dismissing this case would not serve the interests of judicial economy. The point of both cases is to include similarly situated employees allegedly damaged by the same practices. Dismissing this action could unfairly

prejudice employees' right to seek redress for the same harm. The parties in *Benvenutti* are also still engaged in discovery, depositions have not taken place, and the parties have moved to extend the deadlines in the Court's scheduling order. *See Benvenutti*, 5:22-cv-182-MTT, Doc. 119. Consolidation will minimize the risk of duplicating discovery efforts and other pre-trial proceedings as well as the potential for inconsistent rulings.

Finally, modification of the collective action definitions may be necessary. The distinction between employees with "Service Representative" in their job titles and those without does not seem to materially affect the nature of the FLSA claims. *See* Doc. 58 at 27:6-9. ("[W]hen we filed *Benvenutti* we thought that 'service representatives' did encompass all the call center workers at the Macon call center, but GEICO took the position that it did not."). Both actions assert FLSA claims for unpaid overtime wages against the same defendants and seek to represent hourly paid employees assigned to GEICO's Macon call center who use Finesse and handle communications with GEICO customers. Docs. 1 ¶ 1; 33 ¶ 1; *Benvenutti*, 5:22-cv-182-MTT, Doc. 35. Further, the proposed collective action definition in this case, which is effectively defined as all employees not covered by *Benvenutti*, is likely to cause unnecessary confusion because the majority of the plaintiffs in this case opted-in to *Benvenutti* because they understood themselves to be considered a "Service Representative." *See generally Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

Accordingly, the Court finds consolidation rather than dismissal warranted.

## III. CONCLUSION

For the foregoing reasons, GEICO's motion to dismiss this action as duplicative (Doc. 37) is **DENIED**, and the Court **ORDERS** *Benvenutti v. Government Employees Ins. Co. d/b/a GEICO et al.*, No. 5:22-cv-00182-MTT (M.D. Ga.) to be **CONSOLIDATED** with this case, *Willis v. Government Employees Ins. Co. et al.*, No. 5:23-cv-00430-MTT (M.D. Ga.).  Within **FOURTEEN DAYS** of the entry of this Order, the parties shall confer and jointly submit their positions regarding whether there should be a single collective action definition.  Further the Court, the Court extends the deadlines in the Scheduling Order as follows:[6]

> **a. Time for Discovery:** The time for discovery in this case shall expire January 15, 2025.
>
> **b. Expert Witnesses:** Plaintiff must disclose expert witnesses and provide expert reports on or before November 4, 2024.  Defendants must disclose expert witnesses and provide expert reports on or before December 4, 2024.
>
> **c. Motions to Amend the Pleadings or to Join Parties**: Other than a motion for conditional certification and notice, all motions seeking to amend the pleadings must be filed no later than August 12, 2024.
>
> **d. Dispositive Motions:** All dispositive motions must be filed no later than February 15, 2025.
>
> **e. *Daubert* Motions:** All Daubert motions must be filed no later than February 15, 2025.

**SO ORDERED**, this 30th day of May, 2024.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, CHIEF JUDGE
> UNITED STATES DISTRICT COURT

---

[6] As stated in this Order, the parties' joint motion to amend the Scheduling Order, *Benvenutti*, 5:22-cv-182-MTT, Doc. 119, is **GRANTED** in part and **DENIED** in part.