IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHERALE WILLIS, on Behalf of Herself and All Others Similarly Situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT EMPLOYEES INSURANCE COMPANY d/b/a GEICO, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. 5:23-cv-430 (MTT) |

**ORDER**

Plaintiffs Cherale Willis, Sandy Colbert, Tiffaney Peacock, Caral Taylor, and Amalia Benvenutti bring this consolidated action[1] against Defendants GEICO General Insurance Company and Government Employees Insurance Company (collectively, "GEICO"), on behalf of themselves and similarly situated employees, to recover unpaid wages under the Fair Labor Standards Act ("FLSA"). Doc. 70. They allege GEICO failed to pay them and similarly situated employees for all time worked, including time in excess of 40 hours a workweek, in violation of the FLSA.[2] *Id.* ¶ 3. Over 500 opt-in plaintiffs have filed notices of consent to participate in this case. The plaintiffs now

---

[1] On May 30, 2024, the Court consolidated *Benvenutti v. Government Employees Ins. Co. d/b/a GEICO et al.*, No. 5:22-cv-00182-MTT (M.D. Ga.), with this case because of the substantial overlap in the parties, issues, and relief sought. Doc. 63. The plaintiffs have since filed a consolidated complaint superseding the operative complaints and proposing a single consolidated collective action definition. Doc. 70. For a full statement of the procedural history of this case, see the Court's consolidation order (Doc. 63).

[2] Plaintiff Amalia Benvenutti also asserts a retaliation claim, alleging she faced retaliation after complaining about GEICO's alleged unlawful pay practices. Doc. 70 ¶¶ 94-101.

move for conditional certification of a collective action and for court-ordered notice to potential opt-in plaintiffs who have not yet received notice pursuant to FLSA, 29 U.S.C. § 216(b).  Doc. 74.  For the following reasons, that motion (Doc. 74) is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

The plaintiffs and other "similarly situated employees" are current and former GEICO employees who handled communications with "and/or" related to GEICO customers and were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020.[3]  Doc. 70 ¶¶ 2, 84.  Job titles held by these employees include, but are not limited to, Claims Service Representative, Salvage Specialist, Retention Representative, ERS Dispatcher, ERS Representative, Glass Representative, Internet ERS/Glass Representative, and Claims Specialist.[4]  *Id.* ¶ 39.  GEICO pays these employees hourly, and their primary responsibilities include handling communications with GEICO customers and addressing issues related to existing policies, policy services, claims, billing, and other customer service matters.  *Id.* ¶¶ 40-41, 46.

---

[3] GEICO refers to these employees as "Associates."  Docs. 59 at 2 n.1; 76 at 5.

[4] **Job Responsibilities:** According to the plaintiffs, these employees all handle various types of communications with GEICO customers, including:

- In-bound telephone calls
- Out-bound telephone calls
- Electronic communications submitted through GEICO's website (www.geico.com) and/or the GEICO Mobile application

Doc. 70 ¶¶ 40-41.  The plaintiffs allege these communications are aimed at providing assistance to customers regarding existing policies, policy services and offerings (such as roadside assistance), changes to policies, claims, billing issues, and other related matters.

The plaintiffs claim GEICO implemented a common policy, as part of a transition to remote work in March 2020, of paying these employees only for the time they are logged into a CISCO software application called "Finesse," which tracks their time handling communications with and/or related to GEICO customers.[5]  *Id.* ¶¶ 45-55.  Employees are required to log into Finesse at the start of their scheduled shift and log out at the end, even if they do not actually use the software to communicate with customers.[6]  Docs. 70 ¶¶ 50-52; 77 at 2-3, 5-7.  The time recorded in Finesse is then entered into another system called Workday, which GEICO uses for payroll purposes.  Docs. 40-5 ¶ 9; 77 at 2-3.  The plaintiffs claim employees are instructed to ensure that the time they enter into Workday reflects the time they were logged into Finesse.  Docs. 40-5 ¶ 9; 77 at 5-6.  Any time not captured in Finesse or not specifically approved by a supervisor is allegedly not considered work time for pay purposes.  *See*, *e.g.*, Doc. 40-5 ¶¶ 7-12.  Thus, the plaintiffs are not paid for work activities performed before logging in, after logging out, and during downtime because of technical issues.  Doc. 70 ¶¶ 65-81.

**Pre-Shift Activities.**  The plaintiffs allege that they are required to perform necessary pre-shift tasks before logging into Finesse.  *Id.* ¶ 64.  These tasks include booting up their computers and completing a multi-step login process to access

---

[5] Even if Finesse is, as GEICO claims (Doc. 76 at 9), not a traditional timekeeping tool, the plaintiffs contend, with evidentiary support, that GEICO effectively uses it as such, by compensating employees only for the time they are logged into the system.  Doc. 70 ¶¶ 45-55.

[6] The plaintiffs and other similarly situated employees have various job titles, and their positions have slightly different responsibilities and require varying levels of interaction with Finesse.  Docs. 76 at 11; 76-1.  For example, Service Representatives may use Finesse more extensively to handle customer interactions, while ERS Representatives and Salvage Representatives use Finesse for other purposes, such as managing roadside service requests or processing claims-related paperwork.  According to GEICO, some of the positions identified by the plaintiffs use different software applications to handle communications with customers.  Doc. 76 at 11.

GEICO's internal systems and tools required for their duties.  *Id.* ¶¶ 56-61.  They also include activities such as:

- Connecting to GEICO's network;
- Opening, loading, and logging into numerous programs and applications;
- Reviewing Outlook emails and Webex messages with updates related to their work; and
- Logging into Finesse.

*Id.*  The plaintiffs allege that these tasks are essential to their job functions, but because they are performed before logging into Finesse, the time spent on them is not compensated.  *Id.* ¶¶ 62-67.

**Post-Shift Activities.**  The plaintiffs allege that after logging out of Finesse at the end of their shifts, they are required to perform additional work-related tasks, including completing customer documentation, closing various software programs, and shutting down their computers.  *Id.* ¶¶ 68, 72-74.  They also claim that they perform unpaid tasks such as updating notes or documentation, reading and responding to additional emails or Webex messages from management, and answering correspondence they did not respond to during their shifts.  *Id.* ¶¶ 68, 72.  Like pre-shift tasks, these post-shift activities are not compensated because they occur after logging out of Finesse.  *Id.* ¶ 73.

**Technical Downtime.**  The plaintiffs claim they are not compensated when technical issues prevent them from being logged into Finesse.  *Id.* ¶¶ 75-78.  For example, if technical issues prevent employees from logging into Finesse or kick them off Finesse, they are not compensated for the downtime, even though they remain

4

available and on call.  *Id.*  If employees experience downtime, the plaintiffs claim they are required to make up the time by working past the end of their scheduled shift time (effectively off-the-clock) or by having the downtime deducted from their accrued paid leave or vacation time.  *Id.* ¶ 78.  Additionally, the plaintiffs claim employees are expected to work to resolve the issue and regularly update their supervisors during downtime.  *Id.* ¶ 77.

Based on these allegations, the plaintiffs claim that they and similarly situated employees often work more than 40 hours a workweek without being compensated for all hours worked.  *Id.* ¶¶ 80-81.

**B. Procedural History**

This consolidated action stems from two related FLSA collective actions against the same defendants.  *See* Doc. 63.  The first action, *Benvenutti v. Government Employees Ins. Co. d/b/a GEICO et al.*, No. 5:22-cv-00182-MTT (M.D. Ga.), was filed by former claims service representative Amalia Benvenutti who alleged that GEICO's reliance on Finesse resulted in widespread failure to compensate her and similarly situated service representatives for all time worked in violation of the FLSA (Doc. 35).  On April 26, 2023, the Court conditionally certified *Benvenutti* as a collective action and ordered notice to be sent to "All current and former Service Representatives who worked for GEICO and were managed out of the GEICO Macon, Georgia call center at any time since March 1, 2020."  Doc. 63 at 3; *see Benvenutti*, No. 5:22-cv-182-MTT, Doc. 39 at 10.  GEICO was ordered to produce a notice list with contact information for the individuals who met this definition.  *Id.*

Numerous employees—with and without "Service Representative" in their job titles—were not on GEICO's notice list, yet they filed notices of consent to participate anyway because they understood themselves to be Service Representatives and many of them worked in GEICO's centralized service department.[7] Doc. 63 at 4; *see Benvenutti*, No. 5:22-cv-182-MTT, Docs. 114 at 5; 115 at 2. "Internet Service Representatives," for instance, were included on the notice list but "Emergency Roadside Service (ERS) Representatives" were not. Doc. 63 at 4. Even some Internet Service Representatives were omitted from the list without explanation. Doc. 63 at 4 & n. 3, 4; *see Benvenutti*, No. 5:22-cv-182-MTT, Docs. 115 at 2; 117 at 4 n.4.

Consequently, on October 26, 2023, Plaintiffs Cherale Willis, Sandy Colbert, and Tiffaney Peacock, filed a second, related action based on the same alleged unlawful pay practice alleged in *Benvenutti*. *Willis et al., v. Government Employees Ins. Co. d/b/a GEICO et al.*, No. 5:23-cv-430-MTT (M.D. Ga.), Doc. 1. On December 13, 2023, the plaintiffs amended their complaint as of right and added Caral Taylor as a named plaintiff. Doc. 33. They alleged that the plaintiffs in the second action were similarly situated to the plaintiffs in *Benvenutti* but were employed "in at least one hourly-paid job position that GEICO d[id] not consider to be within the category of 'Service Representatives,'" for whom the Court ordered notice. *Id.* ¶¶ 1, 40, 45, 49, 51-55, 74-77. Thus, they sought to certify a separate collective of employees assigned to the Macon call center who handled communications with customers and worked in an hourly-paid position other than "Service Representative" as defined in *Benvenutti*.

---

[7] When asked why these individuals were omitted from the notice list, GEICO claimed that they were not within the category of "Service Representatives" for whom the Court ordered notice. Doc. 63 at 4; *see Benvenutti*, No. 5:22-cv-182-MTT, Docs. 114-2; 114-3; 115 at 2-3.

Docs. 1; 33 ¶¶ 33, 80.  In short, the plaintiffs were trying to capture similarly situated employees who were not on GEICO's notice list.

On December 27, 2023, GEICO moved to dismiss *Willis* as duplicative of *Benvenutti*, arguing that the parties, issues, and relief sought were substantially the same in both cases because the four named plaintiffs in *Willis* and at least seventeen opt-in plaintiffs were also plaintiffs in *Benvenutti.*  Doc. 37.  The Court denied GEICO's motion to dismiss and consolidated *Benvenutti* with *Willis* because both actions sought to recover unpaid overtime wages under the FLSA on behalf of hourly paid employees assigned to GEICO's Macon call center who use Finesse and handle communications with GEICO customers.  Doc. 63 at 9.  The Court also ordered the parties to address whether there should be a single collective action definition to simplify the case moving forward.  *Id.*

The parties agreed that there should be a single collective if the consolidated case were to proceed.[8]  Doc. 68.  On June 21, 2024, the Court ordered the plaintiffs to file a consolidated complaint superseding the respective complaints and containing a single consolidated collective action definition.  Doc. 69.  The plaintiffs have since filed their consolidated complaint.  Doc. 70.  They now request authorization to notify similarly situated employees of their right to join this lawsuit and move to conditionally certify a collective action defined as:

---

[8] Although GEICO argued that the plaintiffs' allegations were not suitable for collective action treatment under 29 U.S.C. § 216(b), GEICO stated that it would not oppose a request "to amend the [operative] complaint for purposes of including the following" consolidated definition: "All current and former hourly-paid GEICO employees who have handled communications with GEICO customers and/or communications related to GEICO customers through the Finesse and/or Salesforce platforms and were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020."  Doc. 68 at 2.

7

> All current and former hourly-paid GEICO employees who have handled communications with GEICO customers and/or communications related to GEICO customers and were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020, regardless of job title.

Docs. 70 ¶ 84; 74 at 2-3.  They also request that the Court:

> (1) order GEICO to produce a list of all Putative Notice Opt-In Plaintiffs, including names, last known mailing addresses, last known email addresses, and last known telephone numbers within fourteen (14) days of the Court's ruling;
>
> (2) approve Plaintiffs' proposed Notice of Pending Fair Labor Standards Act Lawsuit ("Notice") (Doc. 74-1) and Consent to Become Party Plaintiff ("Consent Form") (Doc. 74-2);
>
> (3) authorize Plaintiffs to send their proposed Notice and Consent Form to Potential Opt-In Plaintiffs via U.S. Mail (along with a prepaid return envelope addressed to Plaintiff's counsel) and email; and,
>
> (4) require that Consent Forms to join this action be postmarked or otherwise received by Plaintiffs' counsel within ninety (90) days of the date notice is sent.

Doc. 74 at 3.  In response, GEICO argues the plaintiffs' motion for conditional certification should be denied.  Doc. 76.

## II. STANDARD

The FLSA requires covered employers to pay overtime compensation for each hour that non-exempt employees work in excess of 40 hours in a workweek.  29 U.S.C. §§ 206, 207, 213.  Section 216(b) provides these employees a right of action against their employers for violations of FLSA's overtime provisions.  Under § 216(b), these employees may sue individually or bring a collective action on behalf of themselves and other "similarly situated" employees.  *See* 29 U.S.C. § 216(b).  However, in a prospective collective action brought under § 216(b), potential plaintiffs must affirmatively opt into the action by filing their written consent with the court.  *Hipp v.*

*Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).  And "[t]he decision to create an opt-in class under § 216(b) … remains soundly within the discretion of the district court."  *Id.* at 1219.[9]

The Eleventh Circuit has endorsed a two-stage approach to certification of FLSA collective actions: the "notice stage" and the "decertification stage."[10]  *Id.*  At the "notice stage," which is relevant here, the Court determines "whether notice of the action should be given to potential class members."  *Id.* at 1218 (citation omitted).  In making this determination, the Court must ask whether there are other employees who desire to opt in and whether those employees are similarly situated with respect to their job requirements and pay provisions.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  The plaintiffs bear the burden of demonstrating a reasonable basis for the claim that there are other similarly situated employees who desire to opt into the litigation.  *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).  Because the Court usually relies only on the pleadings and any affidavits submitted by the parties, "a fairly lenient standard" is applied, which "typically results in conditional certification of a representative class."  *Hipp*, 252 F.3d at 1218 (internal quotation marks and citation omitted).  If the class is conditionally certified, "putative class members are given notice

---

[9] While "*Hipp* involved a collective action … under the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, that statute incorporates FLSA's collective action" provision.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 n.37 (11th Cir. 2008) (quotation marks and citations omitted).  Thus, *Hipp* "applies in both contexts."  *Id.*

[10] But as the Eleventh Circuit in *Mickles v. Country Club Inc.* emphasized, this approach is merely a suggestion for district courts "to better manage § 216 cases."  887 F.3d 1270, 1276 (11th Cir. 2018) (quotation marks and citation omitted).  The Court finds the suggested approach appropriate to apply here for the reasons discussed below.

and the opportunity" to opt into the action, and "[t]he action proceeds as a representative action throughout discovery." *Id.*

The second stage of the certification process "is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Id.* Because at this stage the court has a more extensive and detailed factual record, the standard to show substantial similarity "is less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citations omitted). If the Court determines at the second stage that the class representatives (original plaintiffs) and the opt-in plaintiffs are similarly situated, the collective action proceeds to trial on the merits. *Hipp*, 252 F.3d at 1218 (quotation marks and citation omitted). If they are not similarly situated, generally the collective action becomes decertified, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed to trial on their individual claims. *Id*.

### III. DISCUSSION

The plaintiffs seek conditional certification of their claims and request authorization to notify similarly situated employees of their right to join this lawsuit. Docs. 70 ¶ 84; 74. They argue that GEICO's common policy and practice of not paying them for all hours worked binds them and similarly situated employees together and makes their claims suitable for collective action treatment under the FLSA. Docs. 74; 74-3 at 1-2. GEICO opposes the motion arguing (1) the Court should not apply the two-step process for collective action certification; (2) the plaintiffs have not shown a common unlawful policy or practice related to compensating Associates through Finesse; (3) even under a lenient analysis the plaintiffs fail to "engage" with GEICO's

evidence and thus have not demonstrated they are similarly situated to other employees; and (4) the plaintiffs' proposed collective action definition is overly broad and unmanageable.  Doc. 76 at 5-8.

GEICO argues that the Court should follow the approach in *Swales v. KLLM Transport Services*, 985 F.3d 430 (5th Cir. 2021), instead of the two-step process for collective action certification.  Doc. 76 at 13.  In *Swales*, the Fifth Circuit instructed district courts to rigorously assess whether potential plaintiffs are "similarly situated" by considering all available evidence at the outset, rather than relying on a two-step certification process.[11]  *Swales*, 985 F.3d at 442-43.  GEICO's push for a rigorous analysis is a bit odd, because GEICO's evidence is consistent with the plaintiffs' relevant allegations.  Docs. 76-3—76-14.  Declarations submitted by GEICO confirm that the first and last task for employees covered by this lawsuit is logging in and logging out of Finesse, even if they do not use Finesse throughout their shifts or to communicate with customers.  *See*, *e.g.*, Docs. 76-7 ¶ 14; 76-9 ¶¶ 3-6; 76-10 ¶¶ 13, 16; 76-12 ¶¶ 13, 18; 76-13 ¶¶ 12-13, 16.

The real issue, as GEICO understandably argues, is not whether employees are similarly situated but rather whether activities not recorded by Finesse are "integral and indispensable."  *See Llorca v. Sheriff, Collier Cnty., Fla.*, 893 F.3d 1319, 1324 (11th Cir. 2018) (holding preliminary and postliminary activities are compensable under the FLSA only if they are both integral and indispensable to the employee's principal activities).  The resolution of that issue requires a more developed record.  *Id.* ("The inquiry is fact-

---

[11] This includes determining whether differences in job duties, defenses, or pay structures exist that would prevent collective action treatment.  *Swales*, 985 F.3d at 442-43.

intensive and not amenable to bright-line rules."). Because discovery is not complete, the Court applies the approved two-step process for collective action certification in order to efficiently manage this FLSA litigation. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952-53 (11th Cir. 2007) ("[T]he lenient [two-step] standard … may be most useful when making a certification decision early in the litigation before discovery has been completed.").

GEICO's remaining arguments either misconstrue the plaintiffs' allegations or prematurely raises issues that should be addressed after discovery has been completed.[12] *See Hipp*, 252 F.3d at 1218; *see also Pares v. Kendall Lakes Auto., LLC*, 2013 WL 3279803, at *4 (S.D. Fla. June 27, 2013). Thus, in deciding whether to grant conditional certification, the Court will focus on whether other similarly situated employees wish to participate in this litigation and addresses GEICO's arguments where appropriate. *See Morgan*, 551 F.3d at 1258.

**A. Interested Employees**

To maintain a collective action under the FLSA, plaintiffs must demonstrate that there are other employees who desire to participate. *Sizemore v. Grayhawk Homes Inc.*, 2018 WL 1997539, at *2 (M.D. Ga. Apr. 27, 2018) (quoting *Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014)). Here, over 500 opt-in plaintiffs have demonstrated their interest in participating in this litigation by filing written consents with the Court. This is more than enough to satisfy the plaintiffs' "fairly lenient

---

[12] Because the plaintiffs submitted declarations alleging that supervisors directed them to mis-record their hours in Workday based on the time they were logged into Finesse, GEICO argues that the plaintiffs rely on a "rogue manager" theory and fail to establish a common pay policy or practice. Doc. 76 at 9-10, 17-19. But any deviation from GEICO policy by individual managers should be addressed after discovery has been completed because GEICO has submitted evidence supporting some of the plaintiffs' relevant allegations related to the use of Finesse. *See, e.g.*, Docs. 76-3 ¶¶ 13, 15; 76-7 ¶¶ 13-16 (unsigned).

burden" to show other employees are interested in joining the suit. *See Albert v. HGS Colibrium*, 2017 WL 1682528, at 3 (N.D. Ga. May 3, 2007) (concluding because two individuals had opted into the litigation, "[t]his shows that former employees seek to be members of a collective action, and the desire to opt-in criteria is met.").

**B. Similarly Situated Employees**

Next, the plaintiffs must establish that they and potential opt-in plaintiffs are similarly situated. To be "similarly situated," the "plaintiffs may show either (1) that their job positions and duties are similar to those positions held by the putative class members … or (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation." *Eyo v. Ace High Marketing, LLC*, 2020 WL 8224928, at *4 (N.D. Ga. Nov. 23, 2020) (citing *Hipp*., 252 F.3d at 1217); *see also Grayson v. K Mart Corp*., 79 F.3d 1086, 1096 (11th Cir. 1996).

Here, the plaintiffs have met their burden to show that they are similarly situated by presenting evidence that putative members of the collective are all subject to the same alleged unlawful compensation practice and policy.[13] First, the Court rejects GEICO's argument that the plaintiffs have not shown a common unlawful policy. Doc.

---

[13] The evidence supporting the plaintiffs' motion for conditional certification includes:

- Declarations from Cherale Willis, Sandy Colbert, and Caral Taylor (Docs. 40-5; 40-6; 40-7);
- Declarations from Jessica Burbank, Lakimberlee Crawford, and Stacey Day (Docs. 40-8; 40-9; 40-10);
- Declarations from Judith Adams, Miyata Finley, Karianne Lawrence, and Rissiah Sanders (*Benvenutti*, No. 5:22-cv-182-MTT, at Docs. 29-4; 29-5; 29-6; 29-7);
- Deposition testimony of Amalia Benvenutti (*Benvenutti*, No. 5:22-cv-182-MTT, at Doc. 29-3), Lisa Peterson, and Mary Lee Irby (Docs. 77-1; 77-2) and
- An email dated January 19, 2024 from a GEICO supervisor detailing GEICO's policies and practices regarding call center employees start and sign-out times for pay purposes (Doc. 40-10 at 7-9).

76 at 14-13.  The plaintiffs are all compensated on an hourly basis and claim they are paid only for the number of hours they are logged into Finesse.  Doc. 70 ¶¶ 51-55.  Because Finesse does not account for all time employees spend performing necessary pre-shift and post-shift activities, such as logging into computer systems, reading and responding to emails, and handling technical issues, the plaintiffs claim they are not compensated for all hours worked, including overtime, in violation of the FLSA.  *Id.* ¶¶ 45-55, 65-81.  In support of these allegations, the plaintiffs provide sworn testimony and declarations from thirteen individuals,[14] detailing the similar paid and unpaid work tasks they are required to perform and the impact of GEICO's alleged policies.  *See*, *e.g.,* Docs. 40-5 ¶¶ 7-12; 40-6 ¶¶ 7-12; 40-7 ¶¶ 8-13; 40-8 ¶¶ 8-13; 40-9 ¶¶ 7-12; 40-10 ¶¶ 7-12; *see also* note 13 *supra*.  Thus, the evidence is sufficient to show that members of the collective share similar job requirements and are subject to the same alleged unlawful compensation practice and policy.

Second, GEICO's argument regarding individualized issues does not preclude conditional certification.  Doc. 76 at 10-11, 22-23.  GEICO emphasizes the differences in potential opt-in plaintiffs' job roles, duties, software applications, and remote work locations, arguing that these differences make the plaintiffs not similarly situated.[15]  *Id.*  Minor variations in job roles or requirements, however, do not automatically defeat the

---

[14] GEICO claims these declarations are cookie-cutter in nature, and do not provide detailed evidence of a common unlawful policy or practice.  Doc. 76 at 6, 20.  However, these declarations state that they are based on personal knowledge and describe common policies and practices that result in unpaid work time.  *See*, *e.g*., Docs. 40-5—40-10.  Consistency, Triangle Shirtwaist Factory lore notwithstanding, can be a virtue.

[15] To be clear, this action is limited to employees based out of GEICO's Macon, Georgia call center.  Doc. 70 at 1-2, ¶¶ 2, 38, 84.  The fact that some employees may work remotely does not change that.  *See* Doc. 76 at 23.

14

requirement that plaintiffs be similarly situated. *Hipp*, 252 F.3d at 1217 (quoting *Grayson*, 79 F.3d at 1096). The focus is on whether the employees are subject to similar unlawful practices, not whether their job functions are identical. *Id.* Here, the plaintiffs have presented sufficient evidence that the practice of tying compensation to Finesse was applied uniformly to hourly-paid employees handling customer communications at the Macon call center, regardless of their specific job titles.[16] Declarations from both GEICO and the plaintiffs confirm that potential collective action members are required to log in and out of Finesse at the beginning and end of their shifts, even if they do not use Finesse to communicate with customers. *See* Docs. 76-5 ¶¶ 5, 12; 76-9 ¶¶ 3, 5-6; 76-10 ¶¶ 7-8, 13, 15-16; 76-12 ¶¶ 13, 15-16, 18; 76-13 ¶ 12-17. Thus, the fact that different employees used Finesse for different purposes does not negate the commonality of the alleged unlawful practice.

In sum, the plaintiffs have met the lenient standard for conditional certification by providing detailed allegations and supporting declarations. This evidence is sufficient to engage GEICO's evidence and demonstrates that other employees wish to opt-in and are similarly situated.

**C. Collective Action Definition, Contact Information, Notice, and Scheduling**

Not surprisingly, the plaintiffs' proposed collective action definition is a little too broad—it could include anyone who uses a phone or encounters digital or written communications with customers. Doc. 70 ¶ 84. But GEICO's proposed definition is a

---

[16] Service Representatives and ERS Representatives both say they are required to boot up their computers, launch software, and complete necessary pre-shift tasks before logging into Finesse. Docs. 40-7 ¶¶ 3, 8, 14-15; 40-10 ¶¶ 3, 7, 12-14; 76-5 ¶¶ 5, 12, 17; 76-8 ¶¶ 8-10. Employees in other roles, such as Salvage Representatives, also provide testimony that they are required to perform post-shift tasks after logging out of Finesse but are not compensated for this time. Docs. 40-7 ¶¶ 3, 8, 14-15; 76-10 ¶¶ 6-7, 12-13, 16; 76-12 ¶¶ 13, 16-19; 76-13 ¶¶ 12-17.

little too narrow—it could exclude some employees required to use Finesse.  Doc. 68 at 2.  The most practical, user-friendly description of the similarly situated employee is perhaps found in the plaintiffs' reply brief: "Plaintiffs seek to represent all of the Macon-based, hourly-paid GEICO employees *who in everyday language are described as customer service representatives*."  Doc. 77 at 2 (emphasis added).  In other words, those employees who provide substantive assistance to customers, not just anyone who talks on the phone.  Because the plaintiffs filed *Willis* to capture employees excluded from GEICO's *Benvenutti* notice list, and GEICO argued *Willis* was duplicative of *Benvenutti*, that tends to illustrate that the parties' practical understanding of service representatives is essentially the same.

Taking all of that into account, the plaintiffs' proposed collective action definition is revised as follows:

> All current and former hourly-paid GEICO employees who ~~have handled communications with GEICO customers and/or communications related to GEICO customers and~~ were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020, **and whose primary job responsibilities include handling communications with GEICO customers and addressing issues related to existing policies, policy services, claims, billing, or similar customer service matters,** regardless of job title.

The evidence thus far is that all employees who perform these functions use Finesse.  Should that change, the parties can propose modification of the collective action definition.[17]  The plaintiffs shall revise the proposed notice (Doc. 74-1) and proposed consent form (Doc. 74-2) attached to their motion accordingly.

---

[17] In its proposed definition, GEICO references the use of "Finesse" and "Salesforce Platforms," but, as far as the Court can tell, Salesforce has been referenced only three times and is not relevant to the plaintiffs' allegations.  Docs. 76 at 7; 76-9 ¶ 3; 76-11 ¶3.  Again, that may change.

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for conditional certification (Doc. 74) is **GRANTED**.  Accordingly, it is hereby **ORDERED** that:

1. The Court **CONDITIONALLY CERTIFIES** this case as a collective action and authorizes Plaintiffs to send notice, in accordance with this Order, to the following individuals who were not sent notice in the *Benvenutti* action:

> All current and former hourly-paid GEICO employees who were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020, and whose primary job responsibilities include handling communications with GEICO customers and addressing issues related to existing policies, policy services, claims, billing, or similar customer service matters, regardless of job title.

2. Within fourteen (14) days of the entry of this Order, Defendants Government Employees Insurance Company d/b/a GEICO and GEICO General Insurance Company d/b/a GEICO (collectively "GEICO") **SHALL** provide counsel for Plaintiffs with the names, last known mailing addresses, last known email addresses, and last known telephone numbers of all individuals identified in Paragraph 1.

3. The Notice and Consent Form, attached to Plaintiffs' Motion as Exhibit 1 (Doc. 74-1) and Exhibit 2 (Doc. 74-2), respectively, are hereby **AUTHORIZED** for distribution to all individuals identified in Paragraph 1—subject to the revisions made by the Court.

4. Plaintiffs' counsel, or a third-party designated by Plaintiffs' Counsel, **SHALL** distribute, via U.S. Mail and email, the Court-authorized Notice and Consent Form to the individuals identified in Paragraph 1.  Each Notice sent by U.S. Mail **SHALL** be accompanied by a prepaid, pre-addressed return envelope. No other material shall accompany the Notice.  Plaintiffs' Counsel **SHALL** use their best efforts to mail and email all Notices on the same day so as to establish a single date of mailing.  Plaintiffs'

counsel **SHALL** bear all costs associated with distributing the Notice and accompanying material in this manner but shall be entitled to petition the Court for a recovery of such costs.

      5. No later than seven (7) days after the Notice has been sent via U.S. Mail and email, counsel for Plaintiffs **SHALL** file with the Court a notice certifying that the Notice has been sent consistent with this Order and identifying the date of mailing.

      6. Plaintiffs' counsel **SHALL** promptly file all returned Consent Forms upon receipt. All Consent Forms shall be postmarked, faxed, emailed, or otherwise received by Plaintiffs' counsel no later than ninety (90) days from the date of mailing in order to be deemed timely.

      **SO ORDERED**, this 26th day of September, 2024.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT