**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**CHERALE WILLIS, *et al.*,**

    *Plaintiffs,*

    v.

**GOVERNMENT EMPLOYEES**
**INSURANCE COMPANY d/b/a GEICO, *et***
***al.***

    *Defendants.*

Case No. 5:23-CV-00430-MTT

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO**
**APPROVE OF FAIR LABOR STANDARDS ACT SETTLEMENT AND DISMISS WITH**
**PREJUDICE THE NAMED PLAINTIFFS AND OPT-IN PLAINTIFFS' CLAIMS**</u>

Plaintiffs Cherale Willis, Sandy Colbert, Tiffaney Peacock, Caral Taylor, Amalia Benvenutti, and Christopher Rice (the "Named Plaintiffs"), individually and on behalf of all Opt-In Plaintiffs who filed written consent forms to participate in the Lawsuits[1] and who were not subsequently dismissed from the Lawsuits by Court Order (collectively, "Plaintiffs"), submit this Memorandum in Support of Plaintiffs' Unopposed Motion to Approve Fair Labor Standards Act Settlement and Dismiss with Prejudice the Named Plaintiffs and Opt-In Plaintiffs' Claims ("Plaintiffs' Unopposed Motion"). The parties submit that the Parties' Settlement Agreement, Release, and Waiver ("Settlement" or "Settlement Agreement")[2] is a fair, adequate, and reasonable settlement of *bona fide* disputes under the Fair Labor Standards Act ("FLSA").

The Settlement comprehensively resolves all pending claims in the Lawsuits. The primary allegations in the Lawsuits are that Plaintiffs worked off-the-clock for a number of minutes each shift and that the unpaid work resulted in unpaid overtime in violation of the FLSA. A significant hurdle for Plaintiffs in the Lawsuits is the fact that GEICO's records reflect they worked 38.75 hours per workweek, or 1.25 hours less than the 40-hour overtime threshold. Therefore, to recover overtime compensation under the FLSA, Plaintiffs must prove that their off-the-clock work was more than 1.25 hours in a given workweek to recover for that week.

The Settlement recovery for the Plaintiffs' collective off-the-clock claims in the aggregate equates to just more than 18 minutes of added unpaid worktime per shift per workweek under a 2-year FLSA statute of limitations analysis.  This is in line with the deposition testimony provided by Plaintiffs who, in general, estimate working off-the-clock without pay between approximately

---

[1]     The term "the Lawsuits" refers to the lawsuits captioned *Willis, et al. v. Government Employee Insurance Company, et al.*, No. 23-CV-00430 (M.D. Ga.), *Benvenutti, et al. v. GEICO General Ins. Co., et al.*, No. 22-CV-00182 (M.D. Ga.), and *Rice, et al. v. Government Employee Insurance Company*, No. 23-CV-00414 (M.D. Ga.).

[2]     The Settlement Agreement is cited herein as "SA at ¶ ___."

15 and 30 minutes per shift. The Settlement recovery for Plaintiffs' collective claims also represents a likely result if the Plaintiffs prevailed at trial.

For the reasons set forth herein, the Court should approve the Settlement.

## I.    BACKGROUND

### A.  The initial filing and consolidation of the *Benvenutti* and *Willis* actions, brought on behalf of service representatives.

On May 11, 2022, Plaintiff Amalia Benvenutti filed a Collective Action Complaint in this Court against Defendant GEICO General Insurance Company asserting claims to recover unpaid overtime wages, liquidated damages, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA") on behalf of the members of a potential collective action, namely service representative employees. Ms. Benvenutti's Collective Action Complaint also asserted an individual retaliation claim under the FLSA. That matter was captioned *Benvenutti, et al. v. GEICO General Ins. Co., et al.*, No. 22-CV-00182 (M.D. Ga.). On January 12, 2023, Plaintiff Benvenutti filed a motion for leave to amend her complaint (which included seeking to add Defendant Government Employees Insurance Company d/b/a GEICO) and filed a motion for conditional certification and for the issuance of Court-authorized notice. (*Benvenutti* Doc. Nos. 28 and 29.)

Shortly thereafter, the Court granted Plaintiff Benvenutti's motion for leave to amend her complaint and granted Plaintiff Benvenutti's motion for conditional certification. (*Benvenutti* Doc. Nos. 34 and 39.) The Court ordered that Defendants produce the names and contact information of current and former service representative employees who had worked for Defendants since March 1, 2020. (*Benvenutti* Doc. No. 39.) Court-authorized notice of the *Benvenutti* lawsuit was sent to more than 2,600 of those current and former employees. *See* Declaration of David Garrison attached to Plaintiffs' Unopposed Motion as <u>Exhibit B</u> ("Garrison Decl.") at ¶ 13. Ultimately,

approximately 500 of those individuals filed written notices of consent to join in the *Benvenutti* action. *Id*.

Through the Court-ordered notice process, several employees of Defendants who were not included on the *Benvenutti* notice lists produced by Defendants, including, for example, Cherale Willis, Sandy Colbert, and Tiffaney Peacock, filed written consent forms to join the *Benvenutti* action. *Id.* at ¶ 14. Defendants asserted that these employees were not included on the *Benvenutti* notice lists, and, therefore, should not be included in the *Benvenutti* action because they did not work as service representatives. *Id.* Plaintiffs disagreed. As a result, on October 26, 2023, Plaintiffs Willis, Colbert, and Peacock filed a separate FLSA collective action against Defendants, on behalf of themselves and other allegedly similarly situated individuals for the time they worked in positions handling communications with GEICO customers and/or communications related to GEICO customers other than the select service representative positions included by Defendants' on the *Benvenutti* notice lists, asserting claims to recover unpaid overtime wages, liquidated damages, attorneys' fees, and costs. That matter was captioned *Willis, et al. v. Government Employee Insurance Company, et al.*, No. 23-CV-00430 (M.D. Ga.). On December 13, 2023, the *Willis* Plaintiffs filed an amended complaint adding Caral Taylor as a Named Plaintiff, in addition to other amendments. (*Willis* Doc. No. 33.)

On May 30, 2024, the Court entered an order administratively consolidating the *Benvenutti* action with the *Willis* action, on the grounds that the cases were duplicative. (*Willis* Doc. No. 63.) Thereafter, Plaintiffs filed a consolidated complaint per the Court's consolidation order. (*Willis* Doc. No. 70.) The consolidated complaint included both the FLSA collective action claims for unpaid overtime wages, liquidated damages, attorneys' fees, and costs under the FLSA, and Ms. Benvenutti's individual retaliation claims under the FLSA. *Id.*

On July 12, 2024, Plaintiffs filed a Renewed Motion for Conditional Certification and for the Issuance of Court-Supervised Notice seeking first-time notice to those not included on the *Benvenutti* notice list. (*Willis* Doc. No. 74). The Court granted the Motion on September 26, 2024, and authorized Plaintiffs to send Court-authorized notice to "[a]ll current and former hourly-paid GEICO employees who were assigned to work for and/or were managed out of GEICO's Macon, Georgia call center at any time since March 1, 2020, and whose primary job responsibilities include handling communications with GEICO customers and addressing issues related to existing policies, policy services, claims, billing, or similar customer service matters, regardless of job title." (*Willis* Doc. No. 79.) As a result of the Court's September 26, 2024, Order, over 4,600 individuals were sent notice of the *Willis* lawsuit Garrison Decl. ¶ 16. Of these individuals, over 1,000 additional individuals filed a consent to join in the *Willis* lawsuit and became party plaintiffs to that action as a result of the notice. *Id.*

Throughout the *Willis* litigation and especially following the close of the second notice period, the parties engaged in substantial discovery. This discovery included, but was not limited to, the exchange of significant written discovery, the deposition of GEICO's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), the depositions of five (5) current and former members of GEICO management (including three former directors), the depositions of all five Named Plaintiffs, and the depositions of over sixty (60) randomly selected Opt-In Plaintiffs (all of whom were subject to Requests for Production of Documents). Garrison Decl. ¶ 21. Plaintiffs' counsel also obtained and produced declarations from twenty-five (25) Opt-In Plaintiffs ultimately gathering deposition and declaration testimony from nearly 100 Plaintiffs. *Id.* Defendant likewise undertook and obtained substantial discovery from Plaintiffs, including written interrogatories, requests for production of documents, and depositions. *Id.*

The enormity of the written discovery and data exchanged also cannot be understated. GEICO produced over 35,000 pages of documents. Garrison Decl. ¶¶ 20 and 21This production included, for example, over 17,000 pages of personnel files for over 450 Opt-In Plaintiffs; emails of Opt-In Plaintiffs and many of GEICO's current and former management employees related to the subject matter of this litigation; and payroll, timekeeping, scheduling, and phone data for over 500 Plaintiffs, among other data and document productions. *Id.* Additionally, a number of Plaintiffs responded to formal written discovery. *Id.*

The parties also vigorously litigated Ms. Benvenutti's individual retaliation claim. Garrison Decl. ¶ 21. The parties obtained written discovery and deposition testimony from at least four witnesses to gather evidence in support of her allegations, including, for example, the depositions of Ms. Benvenutti's former GEICO supervisor to whom she complained about GEICO's pay practices and the retaliation she claims she experienced after raising concerns about said practices, and GEICO's former Director of Human Resources, among others. *Id.*

**B. The *Rice* action, brought on behalf of sales representatives.**

October 19, 2023, Plaintiff Christopher Rice filed a Collective Action Complaint in this Court against GEICO asserting claims to recover unpaid overtime wages, liquidated damages, attorneys' fees, and costs under the FLSA. That matter was captioned *Rice, et al. v. Government Employee Insurance Company*, No. 23-CV-00414 (M.D. Ga.). Mr. Rice's Collective Action Complaint also asserted an individual retaliation claim under the FLSA. Mr. Rice alleged that GEICO terminated his employment because he complained multiple times to GEICO about not being paid proper overtime and because he threatened to report this issue to the Department of Labor. (*Rice* Doc. No. 80).

On December 6, 2023, Plaintiff Rice filed a First Amended Collective Action Complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(B), adding facts to further support his unpaid overtime allegations. (*Rice* Doc. No. 25.)[3] Defendants thereafter moved to partially dismiss Plaintiff's First Amended Collective Action Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and Defendants' motion was denied. (*Rice* Doc. No. 43.) On January 31, 2025, Plaintiff Christopher Rice filed a motion for conditional certification and notice to all GEICO sales representatives nationwide. (*Rice* Doc. No. 74.) The Court denied that motion on June 30, 2025. (*Rice* Doc. No. 92 at 8); *see Rice v. Gov't Emps. Ins. Co.,* 2025 U.S. Dist. LEXIS 123441 (M.D. Ga. June 30, 2025).

Ultimately, a total of 7 individuals who filed written consent forms to join the *Rice* action remained in the case, including Named Plaintiff Rice, and the Court ruled that they may continue to pursue their claims in that action. (*Rice* Doc. No. 98.) On December 11, 2025, the Court consolidated *Rice* into the *Willis* action for the sole purpose of the parties seeking Court approval of their comprehensive Settlement. (*Rice* Doc. No. 113).

Despite the considerably smaller number of Opt-In Plaintiffs in the *Rice* action compared to *Willis*, the parties still engaged in significant discovery. This discovery included the deposition of GEICO's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6), the preparation and exchange of both parties' expert reports, the deposition of Plaintiff's expert witness, the depositions of five (5) current and former members of GEICO management, the deposition of Named Plaintiff Chris Rice, and depositions of all but one of the 6 Opt-In Plaintiffs who remained in the case following the Court's ruling on conditional certification and notice. Garrison Decl.

---

[3]     A Corrected First Amended Collective Action Complaint was filed to correct one of the allegations. (*Rice* Doc. Nos. 78-80).

¶ 22. Moreover, GEICO served, and all but one of the Named and Opt-In Plaintiffs responded to, anywhere from 10-20 Interrogatories, 10 Requests for Production of Documents, 15 Requests for Admission, and was deposed. *Id.* GEICO also produced hundreds of pages of personnel files, and payroll, timekeeping, scheduling, and phone data for nearly all the Named and Opt-In Plaintiffs. *Id.* Like Ms. Benvenutti, Mr. Rice also gathered deposition testimony from multiple GEICO supervisors, managers, and directors supporting his individual retaliation claims. *Id.*

## II.    SETTLEMENT TERMS

After more than 3 years of litigation, on October 3, 2025, the Parties participated in a formal, all-day, in-person mediation for these Lawsuits with Mediator Dennis Clifford, a skilled wage and hour mediator with expertise in wage and hour litigation but were unsuccessful in reaching a settlement that day. (*Willis* Doc. No. 239; *Rice* Doc. No. 106.) Thereafter, the Parties continued to negotiate at arms-length for over two months, which resulted in the parties' reaching a memorandum of understanding setting forth their agreement on the material terms to their settlement and the subsequent Settlement now before the Court. (*Willis* Doc. Nos. 241, 243; *Rice* Doc. Nos. 108, 110.) The Settlement was the result of separately negotiated economic terms for the Named and Opt-In Plaintiffs FLSA off-the-clock overtime wage claims, and each of the Named Plaintiffs' respective general release payments and retaliation claim payments. Garrison Decl. ¶ 24. Plaintiffs' counsels' attorneys' fees and costs were also negotiated separately from the amounts paid to Plaintiffs for their respective claims.  *Id.*

The Settlement reflects the outcome of the parties' extensive negotiations.  Defendants will pay a total of $900,000.00, including all employer-side payroll taxes, subject to Court approval.

> o  $305,362.50 to the Plaintiffs, less all employer-side payroll taxes for recovery of wages for their off-the-clock claims (allocated half as wages

reportable on IRS Form W-2 and half as liquidated damages reportable on IRS Form 1099), *see* SA ¶ (D)(f)(i);

o   $5,000.00 each to Named Plaintiffs Cherale Willis, Sandy Colbert, Tiffaney Peacock, and Caral Taylor as separately negotiated General Release Payments (the "General Release Payments") (allocated as non-wage income reportable on an IRS Form 1099), *see* SA ¶¶ (D)(b)(i) and (D)(g)(iii);

o   $20,000.00 each to Named Plaintiffs Amalia Benvenutti and Christopher Rice as separately negotiated Retaliation Claim Settlement Payments (the "Retaliation Claim Settlement Payments") (allocated as non-wage income reportable on an IRS Form 1099), *see* SA ¶¶ (D)(b)(ii) and (D)(g)(iv);

o   $520,500.00 to Plaintiffs' counsel for attorneys' fees, costs, and expenses, *see* SA ¶ (D)(g)(i);

o   $14,137.50 in estimated settlement administration costs, *see* SA ¶ (D)(c)(ii).

- The Named Plaintiffs and Opt-In Plaintiffs release the claims which were or could have been asserted in any of the Lawsuits, *see* SA ¶¶ (D)(b)(i-iii); and

- The settlement will be administered by a third-party administrator, ILYM Group, Inc., who will establish a Qualified Settlement Fund ("QSF") to receive the funds from Defendants and will, among other things, make all payments under the Settlement, *see* SA ¶ (D)(c)(i).

There are one thousand four hundred and eighty-nine (1,489) Named and Opt-In Plaintiffs covered by the Settlement. Garrison Decl. ¶ 27. Each Opt-In Plaintiffs' overtime recovery under the parties' proposed Settlement is allocated based on the number of workweeks they worked during the applicable time periods covered by the Settlement. Garrison Decl. ¶ 27. One reason that the Opt-In Plaintiffs' recoveries are allocated this way because it is Plaintiffs' counsel's opinion that this the most equitable way to distribute the settlement to Plaintiffs and is driven by the time Plaintiffs worked off-the-clock. The Plaintiffs' recovery for their off-the-clock claims amounts to overtime backpay that equates to approximately more than 18 minutes of added unpaid worktime per shift per workweek under a 2-year FLSA statute of limitations analysis. *Id.* at ¶ 31. Considering the vast majority of the Plaintiffs who sat for a deposition or provided declaration testimony

testified to working at least 15 minutes off-the-clock per shift, this settlement is a good compromise and outcome. *Id. at* ¶ 29. The Settlement also resolves Named Plaintiff Amalia Benvenutti's and Christopher Rice's individual FLSA retaliation claims and provides consideration for general release payments to Named Plaintiffs Cherale Willis, Sandy Colbert, Tiffany Peacock, and Caral Taylor for forgoing additional claims they could have asserted against GEICO.

Defendants denied all liability, asserted several affirmative defenses and, absent settlement, were likely to continue to defend the Lawsuits vigorously to limit or altogether defeat Plaintiffs' recoveries. For example, had this litigation continued, Defendants would have likely contested whether the *Willis* Plaintiffs were similarly situated such that their claims should proceed to trial collectively through a motion for decertification. Even if Plaintiffs were successful in defeating such a motion, Defendants were likely to argue at summary judgment and at trial that Plaintiffs lacked viable claims under the FLSA and were entitled to little to no recovery for unpaid overtime wages. The Settlement provides significant payments to Plaintiffs and avoids the risk of a reduced recovery or no recovery after months or years of continued litigation. For Defendants, the Settlement similarly provides certainty and avoids additional litigation costs and the risk of a judgment in Plaintiffs' favor.

## III. ARGUMENT

In accordance with the Parties' Settlement, Plaintiffs have moved for this Court to review and approve the Settlement as a fair and reasonable compromise of their claims. Under prevailing Eleventh Circuit case law, the parties to an FLSA action can resolve the dispute and enter into a valid waiver of the employee's FLSA claims in two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc., v. United*

*States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, an employee may settle and waive claims under the FLSA if the Parties present a proposed settlement to a court which may enter a stipulated judgment after approving the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1352-53.

Before approving an FLSA settlement, the Court must review the proposed agreement to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013) (holding that the *Lynn's Food Stores* requirement of judicial approval of proposed FLSA settlement agreements also applies to settlements between former employees and employers). "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Caudillo v. Advance Servs., Inc.*, No. 1:22-CV-74 (LAG), 2023 WL 12166481, at *1 (M.D. Ga. May 8, 2023) (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *Williams v. Albany Advoc. Res. Ctr., Inc.*, No. 1:16-CV-216 (LAG), 2019 WL 13301611, at *1 (M.D. Ga. June 25, 2019) (same); *see also Patel v. OM Janie, LLC*, No. 7:22-CV-118 (WLS), 2023 WL 12166448, at *1 (M.D. Ga. Oct. 17, 2023) ("After reviewing a proposed settlement agreement including an FLSA claim, courts are encouraged to approve if the settlement agreement promotes the court's general policy of encouraging the settlement of litigation."). Courts view the adversarial nature of an FLSA case to be an indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. Under this framework, approval of the parties' proposed settlement is appropriate.

### A.    The settlement resolves *bona fide* disputes between the Parties.

This case involves numerous *bona fide* disputes regarding both liability and damages, primarily concerning whether the Plaintiffs performed work off-the-clock that resulted in unpaid overtime wages, and whether GEICO unlawfully retaliated against Named Plaintiffs Amalia Benvenutti and Christopher Rice for voicing their concerns about GEICO's pay practices. (*Willis*

Doc. No. 70; *Rice* Doc. No. 80.) The existence of *bona fide* disputes is clear from the parties unwavering positions: GEICO maintains that Plaintiffs cannot collectively maintain the Lawsuits, that Plaintiffs were paid for all hours worked, and that to the extent Plaintiffs did work off-the-clock, this time was *de minimis*, not known to GEICO, and/or did not push Plaintiffs into overtime given GEICO's typical 38.75-hour workweek, among other arguments. Plaintiffs on the other hand contend that GEICO had a common policy and practice of directing Plaintiffs to enter 38.75 hours per work week into GEICO's timekeeping software "Workday"—to match their typically scheduled work hours—knowing that Plaintiffs regularly performed integral and indispensable work tasks off-the-clock before and after their scheduled shifts that went unrecorded in Workday and, therefore, unpaid. In other words, Plaintiffs allege that GEICO permitted them to record some—but not all—of their hours worked in Workday for pay purposes to avoid paying overtime. Plaintiffs further contend that GEICO knew or should have known that Plaintiffs were working off-the-clock in sufficient amounts to be entitled to unpaid overtime wages, and did not act in good faith.

In short, the parties dispute, at a minimum: (1) whether Plaintiffs were similarly situated such that their claims should proceed to trial collectively through a motion for decertification; (2) whether Plaintiffs worked off-the-clock at all; (3) whether the unpaid time Plaintiffs seek to recover is *de minimis*; (4) whether the work tasks Plaintiffs allege performing off-the-clock are integral and indispensable to perform their jobs; (5) the accuracy of Defendants' payroll and timekeeping records for Plaintiffs; (6) the number of unpaid overtime hours each Plaintiff worked during the applicable time period; (7) the appropriate statute of limitations that should apply (based on Plaintiffs' contested assertion of willfulness); and (8) the availability of liquidated damages (based on Defendants' asserted good faith defense). Garrison Decl. ¶¶ 25-26. As a result of the

extensive data, information, deposition testimony, and documents produced during the course of discovery, information from their clients, information from their experts, and the course of the lengthy settlement discussions, the parties have a fulsome understanding of these issues and the risks presented by them had they continued to litigate this matter through dispositive motions and trial and now wish to resolve these *bona fide* disputes. *Id.*

**B.    The settlement is a fair and reasonable compromise of Plaintiffs' claims.**

To determine whether or not a settlement is fair, courts may consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and amount of discovery completed; (4) the probability of plaintiffs' success; (5) scope of possible recovery; and (6) opinions of counsel. *See Patel v. OM Janie, LLC*, No. 7:22-CV-118 (WLS), 2023 WL 12166448, at *1 (M.D. Ga. Oct. 17, 2023) (citing *Leverso v. SouthTrust Bank of Ala. Nat. Assoc.*, 18 F.3d 1527, 1530-31 n. 6 (11th Cir. 1994)). For the reasons below, the parties submit that the Settlement is a fair and reasonable compromise of Plaintiffs' claims and should be approved.

**1.    Extensive, arms-length negotiations led to this Settlement.**

Here, the Settlement is the result of extensive arm's length negotiations between the parties. Garrison Decl. ¶¶ 20 and 23. The parties, both represented by experienced counsel well-versed in wage and hour class and collective-wide litigation, participated in years of pre-mediation discovery and engaged in a day-long mediation with the assistance of a skilled wage and hour mediator, Dennis Clifford, who has particular expertise in this area of the law. *Id.* at ¶23. While the Lawsuits did not settle at mediation, the parties continued their communications and negotiations in the two-and-a-half months following mediation to reach the proposed Settlement. *Id.* The compromise reached reflects the potential for continued drawn-out discovery disputes, delay, the risk of adverse

outcomes, and the uncertainty regarding how various questions of law and fact would ultimately be resolved. *Id.* at ¶¶ 25, 32, 33.

> **2.      Absent settlement, the Lawsuits would likely continue for several years.**

More than 3 years have passed since the parties began litigating *Benvenutti*, the first of the Lawsuits, and more than 2 years have passed since the filing of *Willis* and *Rice*. Since *Benvenutti*, the Lawsuits have been vigorously litigated, with the parties hotly contesting nearly every motion and discovery request. Garrison Decl. ¶ 33. Absent settlement, there is no doubt the Lawsuits would extend many years to gather additional discovery on the multiple hundreds of Plaintiffs involved, brief dispositive motions, prepare for trial, attend a multi-day trial where the parties were likely to call multiple dozens of witnesses, and litigate near-certain appeals. Thus, and in light of the considerable risk, cost, and uncertainty of continued litigation, the Settlement is fair and reasonable and should be approved.

> **3.      The parties exchanged a significant amount of discovery to date.**

The parties exchanged a significant amount of discovery to date, especially within the sixth months leading up to the parties' October 3, 2025, mediation. Since May of 2025, GEICO chose to take the depositions of over 60 randomly selected *Willis* Opt-In Plaintiffs. Garrison Decl. ¶ 21. These Opt-In Plaintiffs were also Ordered to produce documents responsive to GEICO's requests for production and review with Plaintiffs' counsel interrogatories and requests for admission in advance of their deposition so that they were prepared to provide testimony on the topics therein. *Id.* During this same time, Plaintiffs' counsel also took the depositions of several current and former GEICO management employees and directors, including the deposition of GEICO's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) in the *Willis* matter. Plaintiffs' counsel also secured declaration testimony from numerous Plaintiffs so that Plaintiffs' expert and

Plaintiffs' counsel could rely on combined deposition and declaration testimony from nearly 100 Plaintiffs when preparing their expert reports and litigating dispositive motions. *Id*. Also, in the six months leading up to mediation, GEICO produced (and Plaintiffs' counsel in conjunction with their expert reviewed) payroll, timekeeping, scheduling, and phone data for over 500 Opt-In Plaintiffs. *Id.* GEICO further produced numerous email files related to the Plaintiffs and current and former GEICO management-level employees and directors regarding the claims alleged in the Lawsuits. *Id.*

Prior to May 2025, GEICO took the depositions of 10 *Willis* Plaintiffs and all but one of the *Rice* Plaintiffs, including day-long depositions of all Named Plaintiffs in the Lawsuits. *Id.* at ¶¶ 21-22. Plaintiffs' counsel also gathered and produced additional declarations and documents from Opt-In Plaintiffs and took the depositions of additional GEICO employees, including a 30(b)(6) corporate witness in the *Rice* matter. *Id.* The parties also exchanged and responded to multiple sets of written discovery. *Id.*

In sum, prior to reaching the proposed Settlement, the parties engaged in substantial written and deposition discovery. The parties deposed and/or defended over 70 Plaintiff depositions, at least 10 current and/or former GEICO management employee depositions, and 2 depositions pursuant to Fed. R. Civ. P. 30(b)(6). Garrison Decl. ¶¶ 20-23. The parties also requested and responded to numerous Interrogatories, Requests for Production of Documents, and Requests for Admission, and exchanged a significant number of documents and data related to Plaintiffs' claims and Defendants' defenses. *Id.* Thus, there was substantial investigation of the claims and an exchange of information in discovery to allow counsel to make well-informed decisions in negotiating and agreeing to this Settlement.

###### 4.      Plaintiffs' success is uncertain.

Plaintiffs' success is far from certain. While the Plaintiffs won their motion for conditional certification and notice in the *Benvenutti* and *Willis* matters, they lost it in *Rice*. (*Benvenutti* Doc. No. 39; *Willis* Doc. Nos. 79; *Rice* Doc. No. 92). Had this case not settled, Plaintiffs were faced with the very real risk that the *Willis* matter be decertified, leaving Plaintiffs' counsel with the task of trying over 1,400 individual cases that could result in varied recoveries for Plaintiffs or no recovery at all. Garrison Decl. ¶ 33. The parties' comprehensive Settlement avoids this risk and provides resolution for the collective that represents a meaningful amount of unpaid overtime given the facts and ascertained risks in the Lawsuits. *Id.*

GEICO also asserted a number of affirmative defenses in the Lawsuits, including, for example, that Plaintiffs' alleged off-the-clock time was *de minimis*, not compensable because the work tasks at issue were not integral and indispensable to their primary job duties, that GEICO acted in good faith when compensating Plaintiffs, that GEICO did not act with willful disregard for the law, and that GEICO did not unlawfully retaliate against Named Plaintiffs Amalia Benvenutti and Christopher Rice. (*Willis* Doc. No. 75; *Rice* Doc. No. 25). Prior to settling the Lawsuits, the parties were gearing up to litigate all of these issues through dispositive motions, the outcomes of which could vary.

Additionally, given GEICO typically scheduled Plaintiffs to work 38.75 hours each workweek, Plaintiffs would need to prove that they regularly worked more than 1.25 hours each workweek to have overtime damages on any given week. Garrison Decl. ¶ 32. While the sworn testimony of nearly 100 Plaintiffs puts many of their estimates of off-the-clock work between 15 and 30 minutes per shift, these estimates are still a sample of a much larger group of Plaintiffs. More discovery could see these estimates grow larger or smaller. Further, should this case proceed to trial and the jury find that Plaintiffs performed compensable work off-the-clock without pay,

there is still a risk that the jury determine Plaintiffs' off-the-clock work equated to any number of minutes per shift. For example, if the jury finds Plaintiffs typically worked 5 minutes off-the-clock per shift, this will likely put many Plaintiffs outside the threshold of overtime damages. *Id.* The parties proposed Settlement allows Plaintiffs to receive a recovery that is certain, meaningful, and likely to be paid out within the next year. *Id.* at ¶ 33. Continued litigation could result in little to no recovery for Plaintiffs, or a potential recovery many years down the line.

### 5.    Plaintiffs' possible recovery at trial is highly varied.

Pursuant to the FLSA's overtime provision, 29 U.S.C. § 207(a)(1), employers must pay their employees one and a half times their regular hourly rate for all hours the employees work over forty (40) hours in a workweek. The FLSA provides that employees who are not paid overtime wages are entitled to receive damages in the amount of their unpaid overtime compensation, plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

To date, Plaintiffs have gathered deposition and declaration testimony from nearly 100 Plaintiffs many of which estimate working off-the-clock approximately 15 to 30 minutes per shift. Garrison Decl. ¶ 29. Plaintiffs' expert, using data produced by GEICO and the sworn deposition and declaration testimony from nearly 100 Plaintiffs, calculated the Opt-In Plaintiffs would be owed approximately $345,604.12 in overtime back pay under a 2-year FLSA statute of limitations if a jury awarded 20 minutes of added unpaid, off-the-clock time to each shift Plaintiffs worked. *Id.* at ¶ 30. Liquidated, this amount would be $691,208.24. *Id.* Of course, Plaintiffs face several significant risks litigating their overtime claims through a motion for decertification, dispositive motions, and at trial. Those risks include, and are not limited to: (1) a ruling that Plaintiffs are not similarly situated and their claims cannot proceed collectively to trial; (2) the fact that Plaintiffs were typically scheduled to work 38.75-hours each workweek and would need to prove that they

regularly worked more than 1.25 hours each workweek to have overtime damages on any given week; (3) the failure and/or reluctance of Plaintiffs to participate in additional discovery, let alone a trial; and (4) a jury finding Plaintiffs worked a number of minutes off-the-clock that amounts to little to no overtime backpay for many or all workweeks covered by the Lawsuits. *Id.* at ¶¶ 32-33.

Here, Defendants agree to pay Plaintiffs $305,362.50, which is equal to overtime damages approximating to slightly more than 18 minutes of added unpaid worktime per shift per workweek under a 2-year FLSA statute of limitations, or approximately more than 9 minutes of added unpaid worktime per shift per workweek under a 2-year FLSA statute of limitations, fully liquidated. Garrison Decl. ¶ 31. This number of minutes is well within the number of minutes Plaintiffs testified to working off-the-clock. *Id.* at ¶ 29. It is also a reasonable number of minutes a jury could find Plaintiffs worked. *Id.* at ¶ 31. In short, this amount reflects a reasonable compromise considering the sworn testimony of nearly 100 Plaintiffs, Plaintiffs' expert analysis, and the many risks the parties face if the Lawsuits are litigated to trial.

### 6.     Plaintiffs' Counsel believe this Settlement to be fair and reasonable.

Plaintiffs' counsel drew on their substantial experience in analogous wage and hour cases in order to provide Plaintiffs with a high degree of expertise in this field. Garrison Decl. ¶ 33; *see also* Declaration of Richard Rouco attached to Plaintiffs' Unopposed Motion as Exhibit D ("Rouco Decl.") at ¶ 16.  In turn, Duane Morris, LLP, which represents GEICO, is one of the leading employer-side labor law firms in the country. *See Macedonia Church v. Lancaster Hotel, LP*, No. 05-CV-0153, 2011 WL 2360138, at *6 (D. Conn. June 9, 2011) (". . . Mr. Maatman [is] experienced, highly capable counsel, who [is] well-versed in class action litigation."); *id.* at *10 (". . . Mr. Maatman, as counsel for Defendants, [is] familiar with the legal and factual issues of this case in particular and with class action litigation in general and [he] vigorously pursued [his]

clients' respective positions and negotiated at arms length and in good faith in resolving this class action."); *Ellis v. Costco Wholesale Co.*, No. 04-CV-3341, 2014 WL 12641574, at *1 (N.D. Cal. May 27, 2014) (finding Mr. Maatman is "experienced counsel"); *Darling v. Dow Chemical Co., No*. 1:22-CV-13093, 2023 WL 8480059, at *2 (E.D. Mich. Dec. 7, 2023) (finding Mr. Maatman is "experienced counsel"). The Settlement was reached only after the parties vigorously attempted to secure the most desirable outcome for their respective clients, for example, by exchanging a substantial amount of discovery, collecting deposition and declaration testimony from more than 100 witnesses (comprised of both Plaintiffs and current and former GEICO management employees), and engaging in a day-long, in-person mediation with experienced wage and hour mediator, Dennis Clifford, as well as continued negotiations in the two-and-a-half months following mediation. *Id.*

Counsel for Plaintiffs believe the proposed Settlement's monetary and non-monetary terms are fair and reasonable. Here, the settlement payments to Plaintiffs for unpaid overtime wages will be allocated based on the number of workweeks each Plaintiff worked during the applicable time period covered by the Settlement. *Id.* at ¶ 28. In short, the same formula was applied to every Plaintiff to credit Plaintiffs with a recovery based on how long they worked at GEICO during the applicable period. *Id.* at ¶¶ 28-29. In exchange for the settlement payments, Plaintiffs release only the claims which were or could have been asserted in any of the Lawsuits, *see* SA ¶¶ (D)(b)(i-iii). *See Williams v. Albany Advoc. Res. Ctr., Inc.*, No. 1:16-CV-216 (LAG), 2019 WL 13301611 (M.D. Ga. June 25, 2019) (approving FLSA collective action settlement as a "fair and reasonable resolution of a bona fide dispute" where Plaintiffs release encompassed only claims arising from or related in any respect to the alleged FLSA violations at issue in the lawsuit and related wage-

and-hour claims).  In short, the release is narrow and the Settlement is equitable in its treatment of Plaintiffs.

### C. The separate general release payments to Named Plaintiffs Willis, Colbert, Peacock, and Taylor are reasonable and should be approved.

After negotiating the FLSA collective settlement that provides a recovery to Plaintiffs for their alleged unpaid overtime wages, the parties considered a separate and broader release of claims by Named Plaintiffs Cherale Willis, Sandy Colbert, Tiffaney Peacock, and Caral Taylor. *See* Garrison Decl. ¶ 24. The parties reached an agreement for a more expansive release (beyond the release of claims applicable to the Opt-In Plaintiffs). *Id.* Here, the Settlement provides $5,000.00 each to Named Plaintiffs Willis, Colbert, Peacock, and Taylor as separate consideration for a broader, general release of any and all claims. *See* SA ¶¶ (D)(b)(i) and (D)(g)(iii). These payments for the more expansive release do not come from the Opt-In Plaintiffs' settlement recovery and do not reduce the payments available to the Opt-In Plaintiffs to compensate them for their alleged unpaid overtime. *See* Garrison Decl. ¶ 24.

These general release payments are in line with separately negotiated release payments approved by this Court and other courts within the Eleventh Circuit. *See e.g.*, *Malcom, et al., v. GEICO Indemnity Company, et al.*, No. 5:20-cv-00165-MTT (M.D. Ga. June 10, 2024) (Doc. No. 204 at ¶ 58) (Treadwell, J.) (approving "a more expansive release" and payment for Named Plaintiffs of $5,000.00 in a class action settlement with GEICO as the Defendant); *see also Stafford er al., v. Atlanta Rest. Partners, LLC*, Case No. 23-cv-61053 (S.D. Fla. Aug. 8, 2024) (Doc. No. 91) (granting final approval of class and collective action settlement, and approving payments of $17,500 each to 3 class representatives in exchange for them signing a general release releasing any and all claims against Defendant); *Black v. USAA Casualty Insurance Company*, 1:2021-cv-01363 (N.D. Ga. Dec. 14, 2023) (Doc. 69 at ⊮ 57) (approving separate release and payment to

representative plaintiff for a more expansive release as not a salary, bounty, or both); *Sinkfield v. Persolve Recoveries, LLC*, No. 2023 WL 511195, at *3 n.2 (S.D. Fla. Jan. 26, 2023) ("Because the Plaintiff is being paid this $1,500.00, not as "a salary, a bounty, or both," but in exchange for agreeing to a broader release of claims than the release the other Class Members have given, this payment doesn't violate the strictures of *Johnson v. NPAS Solutions*, LLC, 975 F.3d 1244, 1258 (11th Cir. 2020)."); *Broughton v. Payroll Made Easy, Inc.*, No. 2:20-CV-41-NPM, 2021 WL 3169135, at *4 (M.D. Fla. July 27, 2021) (same).

### D.   The separate retaliation claim settlement payments to Named Plaintiffs Benvenutti and Rice are reasonable and should be approved.

Like the above-mentioned general release payments, the parties reached a separate agreement to release Named Plaintiff Amalia Benvenutti's and Christopher Rice's individual FLSA retaliation claims asserted in the Lawsuits. *See* Garrison Decl. ¶ 24. Ms. Benvenutti and Mr. Rice asserted individual retaliation claims at the inception of their respective lawsuits and have vigorously litigated their individual retaliation claims ever since, including taking substantial discovery into these claims. *Id.* at ¶¶ 21-22. This separately negotiated resolution of Plaintiffs' individual retaliation claims allows the parties to avoid the risks and costs of litigating these claims through summary judgment and to trial while still providing Plaintiffs with a meaningful recovery.

Here, the Settlement provides $20,000.00 each to Named Plaintiff Amalia Benvenutti and Christopher Rice as separate consideration to release their respective individual FLSA retaliation claims. *See* SA ¶¶ (D)(b)(ii) and (D)(g)(iv). These payments do not come from the Opt-In Plaintiff settlement funds and do not reduce the payments available to the Opt-In Plaintiffs to compensate them for their alleged unpaid overtime. Garrison Decl. ¶ 24. These payments also do not impact the general release payments described above for Named Plaintiffs Willis, Colbert, Peacock, and

Taylor. *Id.* For these reasons, the Court should approve these separately negotiated retaliation settlement claim payments.

      **E.**      **The requested payment for attorneys' fees, costs, and expenses is reasonable and should be approved.**

The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). The Court can, however, approve a proposed settlement without separately considering the reasonableness of attorney's fees when the settlement: "(1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement ... ; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Here, the Settlement constitutes a compromise of Plaintiffs' claims (as described above), is attached in full to Plaintiffs' Unopposed Motion as <u>Exhibit A</u>, and Plaintiffs' counsel represents that the $520,500.00 of attorneys' fees, costs, and expenses sought (*see* SA ¶ (D)(g)(i)) are exceedingly reasonable and were negotiated separately from the amount paid to Plaintiffs for their respective claims.

The Lawsuits were highly contested at every juncture and involved over 1,400 Plaintiffs. To date, Plaintiffs' counsel has incurred $1,786,338.00 in attorneys' fees based on their hourly rates and hours billed in this litigation. Garrison Decl. ¶¶ 35 - 37; Rouco Decl. at ¶¶ 18-21. Plaintiffs' counsel has incurred $227,591.30 in costs and expenses to litigate the Lawsuits. Approximately $175,000 of Plaintiffs' counsels' costs and expenses are attributable solely to discovery costs, cost relating to the taking and defending of nearly 100 depositions, the analysis of pay data, and the processing of discovery production. Garrison Decl. ¶¶ 20 – 22, 34; *see also*

April 23, 2025, Status/Discovery Conference Hearing Transcript at 34:18-36:24 (Plaintiffs' counsel noting that their attorneys' fees, costs, and expenses will outpace the Plaintiffs' recovery by a multiplier if the parties are required to engage in additional deposition discovery) (excerpts of which are attached to Plaintiffs' Unopposed Motion as <u>Exhibit C</u>)). Just over $25,000.00 of Plaintiffs' costs are related to the distribution and processing of the FLSA notices to Opt-In Plaintiffs. Garrison Decl. ¶ 34.

Plaintiffs' counsel made multiple attempts at early resolution, including proposing a specific framework for mediation in late 2023, following the *Benvenutti* notice period and, again, on June 16, 2025, before the Parties completed Opt-In Plaintiff discovery. At both times, Plaintiffs estimated the fees and expenses that would be incurred if resolution was not reached at that stage of litigation, and at each stage they were right. *Id.* GEICO also declined that offer and elected to defend the Lawsuits by seeking deposition testimony from at least 100 Plaintiffs. Garrison Decl. ¶ 42.

Because of how this case was litigated, Plaintiffs' fee recovery bears almost no relationship to the fees incurred as a result of the number of hours spent on the litigation. The Settlement provides a payment of $520,500.00 to Plaintiffs' counsel for fees, costs, and expenses. Considering the $227,591.30 in out-of-pocket expenses, Plaintiffs will recover $292,908.70 for their fee if this Court approves the settlement. This payment will represent a recovery of fees of approximately 16% of the fees incurred by Plaintiffs.

Courts within the Eleventh Circuit have consistently held that attorney fee awards in FLSA cases need not be strictly proportionate to the plaintiff's recovery. *See e.g., Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1313 (S.D. Fla. 2009) (stating that "especially in the context of FLSA cases, [] it is not uncommon for fee awards to exceed the plaintiff's recovery in order to

ensure that individuals with relatively small claims can obtain representation necessary to enforce their rights"); *see also Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 806 (11th Cir. 2020) (emphasizing that the success of plaintiffs in FLSA cases should not be measured solely by the size of their recovery) (citing *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180 (11th Cir. 1982) and *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994)); *Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir.1991) (quoting *City of Riverside v. Rivera*, 477 U.S. 561 at 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)) ("'Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'")).

In this case, Plaintiffs' counsel's fee is actually not greater than the wage and damages recovery Plaintiffs will receive. Plaintiffs' counsel's recovery of combined fees, costs, and expenses is greater.  Regardless, it is well settled that in FLSA cases, Plaintiffs' fee recovery alone could be greater than the Plaintiffs' wage and damages recovery of Plaintiffs, as long as the fee is reasonable based on a *lodestar* analysis. *See Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1296 (N.D. Ala. 2014). Several courts have noted that, "'[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case.'" *Id.* (citing *James v. Wash Depot Holdings, Inc.*, 489 F.Supp.2d 1341, 1347 (S.D. Fla. 2007), quoting *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 133 Fed.Appx. 604, 2005 WL 1208573, *9 (S.D. Fla. 2005)); *see also Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1313-1314 (S.D. Fla. 2009) (approving attorneys' fees of $97,796.25 where plaintiff's ultimate recovery under the FLSA was $18,190.84); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at 5-7* (S.D. Fla. Mar. 10, 2005) (approving $63,915 in attorneys' fees where plaintiff's ultimate FLSA overtime recovery was $7,392.00) (Plaintiffs' overtime recovery was affirmed on

appeal at *Tyler v. Westway Auto. Serv. Ctr.*, 133 F. App'x 604 (11th Cir. 2005)). Moreover, "[w]here the fees w[]ere reasonably incurred, courts routinely award attorney's fees far in excess of the judgment obtained by plaintiffs in FLSA actions." *Molina v. SMI Sec. Mgmt., Inc.*, No. 11-24245-CIV, 2013 WL 12092118, at *3 (S.D. Fla. July 15, 2013); *See Galdames v. N & D Inv. Corp.*, 432 Fed.Appx. 801, 806-07 (11th Cir. 2011); *Friedman v. S. Florida Psychiatric Associates, Inc.*, 139 Fed.Appx. 183 (11th Cir. 2005).

Although Plaintiffs negotiated the recovery for their claim for fees, costs, and expenses separately from the recovery for Plaintiffs' wage claims, an analysis of the recovery of Plaintiffs' fees as a percentage of the overall Settlement proceeds provides further confirmation that the recovery is fair and reasonable. The Settlement provides for a recovery for Plaintiffs' fee that is less the one-third (1/3) of the total settlement recovery. Courts around the country have repeatedly recognized that even larger percentages of reasonable fees may be recovered in FLSA collective actions. *See, e.g., Salinas v. U.S. Xpress Enterprises*, 2018 WL 1477127, at *11, report and recommendation adopted, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (approving 40% of the common fund in FLSA collective action settlement); *Brittmon v. Upreach LLC*, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (same); *Hoffman v. Poulsen Pizza LLC*, 2017 WL 25386 at *9 (D. Kan. Jan. 3, 2017) ("Historically, our court has approved fee awards in FLSA cases ranging from "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars."); *Legros v. Mud Control Equip.*, Co., 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (awarding Plaintiff's counsel 40% of gross settlement for fees and costs in FLSA collective action as fair and reasonable where "a significant time and effort has been expended in the three years this case has been pending"); *Mclain et. al. v. First Acceptance Corp.*, No. 3-17-CV-00408, D.E. 57, (M.D. Tenn. 2018) (Crenshaw J./Holmes

M.J.) (approving attorneys' fees and costs approximating 66% of the total FLSA settlement); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-CV-1412, D.E. 56, (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (approving attorneys' fees and costs approximating 50% of the total FLSA settlement); *Matthews v. Priority Energy Servs., LLC*, 2018 WL 1939327, at *1 (W.D. Tex. April 20, 2018) (approving 40% of the gross settlement for fees in FLSA collective action where "experienced counsel for the collective class has worked on this matter for nearly three years of litigation"); *Sarabia v. Spitzer Indus., Inc.*, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (recognizing that a 40% contingency fee in an FLSA case was "in line with that approved in other FLSA cases"); *Mesa v. AG-Mart Produce, Inc.*, 2010 WL 4909591 (M.D. Fla. Nov. 19, 2010) (approving attorneys' fee of $350,000 out of $750,000 minimum settlement involving an FLSA collective action, or 46.6%); *Mabry v. Hildebrandt*, 2015 WL 5025810 at*3 (E.D. Pa. Aug. 24, 2015) (approving 40% contingency fee in FLSA action and finding that, "[i]n this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45%."); *Flerlage v. US Foods, Inc.*, 2020 WL 6318662, at *4 (D. Kan. Oct. 28, 2020) (approving a percentage of the fund of 45.4%, inclusive of fees and costs in an FLSA settlement); *Enegren v. KC Lodge Ventures LLC*, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in this context" in FLSA collective action); *Daniels v. Prod. Mgmt. Indus., LLC*, 2018 WL 1954352 at *4 (W.D. La. Apr. 20, 2018) (acknowledging that "contingency fee arrangements in this legal community are generally in excess of 33%" and finding that 40% of the gross settlement amount for attorneys' fees and costs as "fair and reasonable" in FLSA collective action); *Heffernan Bryant v. Un. Furniture Indus., Inc.*, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (approving a request for 40% in fees in FLSA collective action while acknowledging that attorneys' fees in percentage of the fund common fund class cases

"commonly fall between a lower 20% and an upper end of 50%"); *Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (approving a 40% fee in FLSA collective action); *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, at *10 (S.D. Tex. May 7, 2008) (40% fees in FLSA collective action); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21, 2011 U.S. Dist. LEXIS 38663, at *59 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund."); *Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *1 (E.D. Pa. 2015) (44% for fees approved as being "on the higher side, but it is not so high as to be unreasonable" in FLSA case); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) (holding "the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (noting that a district court had determined that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund).

In addition to considering the purposes behind the FLSA, courts in the Eleventh Circuit also consider the defendant's litigation conduct when evaluating the reasonableness of attorney fee awards. *See e.g.*, *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008), *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (noting that the defendant's vigorous defense contributed to the high attorney fee award); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347-1354 (S.D. Fla. 2007) (approving attorney's fees of $114,021 where the Plaintiff succeeded in obtaining approximately $3,500 in damages, due, in part, to Defendants vigorous defense of the case that required plaintiff's counsel to expend more hours on litigation). Here, there is no doubt that Defendants vigorously defended the Lawsuits in a manner that resulted in Plaintiffs incurring

significant fees and expenses that they did not anticipate they would incur. And, if the Parties had not reached this Settlement, those fees and expenses would have grown significantly.

In sum, the Settlement provides Plaintiffs' counsel with a fair and reasonable payment for their separately negotiated attorneys' fees, costs, and expenses and should be approved.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs submit that the Court should approve all aspects of the Settlement as fair and reasonable, and enter the proposed order attached to their Unopposed Motion approving the Settlement and dismissing this case with prejudice.

Date: December 23, 2025     Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON***
**JOSHUA A. FRANK***
**NICOLE A. CHANIN***
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

**RICHARD ROUCO**
**GEORGE N. DAVIES**
**ZAKARY PEARSALL**
QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP
2 - 20th Street North, Suite 930
Birmingham, AL 35203
Telephone: (205) 870-9989
rrouco@qcwdr.com
gdavies@qcwdr.com
zpearsall@qcwdr.com

**NICHOLAS STANOJEVICH**
**TESSA A. WARREN**
QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP
4100 Perimeter Park South
Atlanta, GA 30341
Telephone: (404) 299-1211
nstanojevich@qcwdr.com
twarren@qcwdr.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Memorandum in Support of Plaintiffs' Unopposed Motion to Approve Fair Labor Standards Act Settlement and Dismiss with Prejudice the Named Plaintiffs and Opt-In Plaintiffs' Claims* filed electronically with the Clerk's office by using the CM/ECF system on December 23, 2025, and served upon Defendants' Counsel as indicated below:

**Gerald L. Maatman, Jr.**
**Jennifer A. Riley**
**Alex W. Karasik**
**Gregory R. Tsonis**
**Tiffany E. Alberty**
**Ryan T. Garippo**
**George J. Schaller**
**Bernadette M. Coyle**
**Zev Grumet-Morris**
**Brett Bohan**
**Christian Palacios**
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, IL 60603
Telephone: 312-499-6710
Facsimile: 312-499-6701
gmaatman@duanemorris.com
jariley@duanemorris.com
awkarasik@duanemorris.com
gtsonis@duanemorris.com
tealberty@duanemorris.com
rgarippo@duanemorris.com
gschaller@duanemorris.com
bcoyle@duanemorris.com
zgrumetmorris@duanemorris.com
bbohan@duanemorris.com
cpalacios@duanemorris.com

**Adam C. Keating**
DUANE MORRIS LLP
1075 Peachtree Street, Suite 1700
Atlanta, GA 30309
Telephone:  (404) 253-6919
Facsimile:  (404) 745-8435
akeating@duanemorris.com

**Nicolette J. Zulli**
DUANE MORRIS LLP
1300 Post Oak Blvd., Suite 1500

Houston, TX 77056
Telephone: (713) 402-3900
njzulli@duanemorris.com

**Rebecca S. Bjork**
**Anna M. Sheridan**
DUANE MORRIS LLP
901 New York Avenue NW, Suite #700
Washington, D.C. 20001
Telephone: (202) 7765264
rsbjork@duanemorris.com
asheridan@duanemorris.com

*Counsel for Defendants*

/s/ David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON**
  **MARTIN & GARRISON, PLLC**
